Good morning, Your Honor. Frank Cialone, Chartres Free's LLP for the Plaintiff and Appellant, MJT Securities LLC. I'd like to reserve two minutes for rebuttal. Your Honors, on the central issue of this appeal on MJT's claim for aiding and abetting a breach of fiduciary duty, the recent California Court of Appeal case, KC v. United States Banking Association, is dispositive. KC was published after the briefing on this matter was completed. MJT raised KC in our supplemental briefing, our request for supplemental briefing. It's dispositive here because the district court dismissed MJT's claim after finding that MJT had failed to allege that the defendants acted in the of aiding and abetting a breach of fiduciary duty specific to that claim, without reference to conspiracy or other torts. The elements of the cause of action do not include that the defendant acted for his own gain. KC states that liability may be imposed if the person knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to act. Thus, under KC itself, the district court's decision should be reversed. This is actually one of three grounds for reversal. So what was the breach of fiduciary duty, the peddling off of the LLM for $500,000? The breach of fiduciary duty, Your Honor, was attempting to deprive MJT of the fair market value of the sale of the entity, as well as concealing the actual The fair market value would become payable if JSS, I guess it is, breached the joint venture agreement, wouldn't it? Your Honor, the fair market value would become payable if JSS had terminated the joint venture. But JSS did not, in fact, formally terminate the joint venture. MJT had a right to participate in the sale of the LLM. I'm sorry, of the LMM, the wheat market maker. MJT had a right to participate in 30 percent of the sale, and so what JSS did, facilitated by Toronto Dominion, was set up a sham structure for the purchase so that they had a right to have TD buying a group of assets here, and they carved off the LLM market maker and had that purchased by TD Options, which at the time of this structuring didn't even exist. Now, JSS wanted to have the lower value on it because they were hopeful that they would be able to take advantage of the did the defendant, what is it, Toronto Bank, violate or participate in some violation of a fiduciary duty that I'm still a little unclear about. The structure of the deal designed to conceal the value and actually to force down the sale price of the wheat market maker. Well, maybe it's the breach. Right. That structure could not have happened without Toronto Dominion's cooperation. The question is, A, why is it a fiduciary duty as opposed to a contract breach, and B, what is there in the complaint that alleges knowledge by TD of the fiduciary responsibility as opposed to of a contract breach or innocent structuring? The reason that it is a fiduciary duty rather than a simple contract breach is because JSS and MJT were in a joint venture. And under Illinois law, which controlled the joint venture, it was a partnership to which normal partnership fiduciary duties apply. The reason there's an allegation that TD had knowledge of this is because TD, in fact, did have knowledge of the joint venture. Where's the allegation of knowledge? Knowledge of the fiduciary duty. Well, here it is, I guess. Paragraph 20, is that where it is? Yes, Your Honor. The defendants agreed to the sham structure and purchase price for the LMM despite being aware of JSS's continuing fiduciary duties to MJT and its principles, et cetera, despite knowing that the purchase price unilaterally allocated by JSS was unfair to MJT, and despite knowing about the arbitration proceedings. So the allegation is that they knew of the duty, they knew of the relationship, they materially and substantially assisted in the breach of the relationship, that the sham structure designed to conceal the true value and designed to force down the sale price of the lead market maker was itself a breach, and that this could not have happened without Toronto Dominion's assistance and without TD options. Well, suppose the joint venture agreement had ended. Was there still a fiduciary duty remaining if the agreement had ended a year before? If the agreement had actually ended, if the joint venture had ended, the provision that entitled MJT to participate in a sale, in the sale price, remained in effect under I believe it's paragraph 16 of the contract. So, yes, the fiduciary duty would have continued. If the joint venture agreement had ended such that MJT and JSS had agreed to eliminate the agreement and go their separate ways, that would be different. But that was not the case here. But in any event, this case was thrown out for lack of an allegation of independent economic advantage. Correct. And there may be other grounds. I mean, there may be other issues, such as, for example, whether there was a continuing fiduciary responsibility. But that wasn't the basis for the dismissal here. That is correct. That is correct. And that has not been briefed. But under the governing law of Illinois law, which governed the relationship between JSS and MJT, there was a continuing fiduciary relationship. They continued to be in a joint venture. MJT continued to have property in the hands of JSS. But from your account a minute or so ago, it seems to me possible that if the joint venture didn't continue but only the agreement did, then what you have is a contractual right at this point, not a fiduciary right. That sounds plausible to me. I don't know, but it's possible. If the joint venture had been formally terminated? Because your original allegation in the arbitration was that there was constructive termination. That is correct. That was a disputed allegation. We allege that based on the facts and the conduct of JSS, that that constituted a constructive termination. That is correct. But that didn't extinguish JSS's obligations under the agreement as continuing to hold MJT's property, its interest in the lead market maker. What about the – how do you explain, Casey, in light of the earlier cases? I mean, is there a reconciliation problem or do you think they're just different lines of authority or what? What happened, Your Honor, is that the California cases on this that have been talked about as being about aiding and abetting a breach of fiduciary duty are really actually fairly confused and they're not very clear on the subject. For example, one of the lead cases, which both sides have cited, is Bancroft-Whitney. Bancroft-Whitney, the party without the fiduciary duty, was actually held liable for unfair competition. The doctor's company case, which is where this all really starts, is really about a conspiracy. Some of the cases talk about conspiracy and aiding and abetting a breach of fiduciary duty together, basically mixing up. So you think it's a difference in the cause of action as opposed to what appeared to me to be perhaps a difference in what they mean by having independent financial interest. That is, sometimes it appears that all they're really saying is that if you're simply an agent of the principal, if you're a lawyer or an accountant or an employee, then you're not going to be regarded as aiding and abetting, which would cut across different causes of action. I think that's the genesis of the rule, and that comes out of the doctor's company case. But that case specifically talks about conspiracy. And I'm actually at my time for about a second. Why don't you go another minute and a half. Sure. That's actually the genesis. And it's for the simple fact that a corporation can't act except through its agents, and therefore the agents cannot be held to be conspiring with the corporation unless they're seeking to further their own gain. Then the cases have been really honestly quite confused about this. And the district court in Nielsen attempted to sort it out and said you have aiding and abetting liability here and you have conspiracy liability there. That one requires acting to further your own gain. This one does not. And we raised Nielsen below, and as T.D. correctly asserted at the time, that was a lone federal case on the issue of state law. And then Casey came along, and it's the first case to actually cite Nielsen and apply it and approve it of its finding. And that is the first time that a California court has come out and said these are the elements of aiding and abetting a breach of fiduciary duty specific to that claim, and it found those elements not to include the allegation of furtherance of your own gain. Thank you very much. Unless there's anything further, thank you. May it please the Court, my name is John Sommer. I represent the Toronto Dominion Bank and TD Options LLC. I'd like to address the point first made by Mr. Cialone that Casey is dispositive. If it intended to reject the financial gain element, which is set forth in City of Atascadero, Pierce, Heckman v. Amundsen, and other cases. First of all, as I read those cases, they don't exactly have a financial gain element. They say financial gain or interest, something like that. It's in the alternative at various points. And it did seem to me that what they were really saying was that you had to have an independent role. You can't simply be an agent of the principal. And so I'm not at all clear that there wouldn't be a cause of action here anyway. But why don't you go ahead. So in that light, why do you think Casey doesn't say that? Well, Casey does not mention City of Atascadero. If it intended to overrule City of Atascadero or disagree with it because it actually is a separate court of appeal in California, it would have said so. All it did was make a cursory recitation of elements of aiding and abetting a tort as it saw it, and then it proceeded to address the issue of knowledge. It does not even speak to the question of financial gain as being an element. And regarding the court's comment that the origins of this financial gain element may be less than clear, if you look at the facts of the cases, in each case there was a financial gain received as a result of the aiding and abetting and breach of fiduciary duty, and really the origin is Bancroft-Whitney in spite of the fact that it's an unfair competition case. But what would be the reason for it, the explanation for such a rule? It provides a limitation in terms of making sure that before the cost of defending and aiding and abetting claims imposed on a defendant, that there will be some showing that the defendant has actually had some reason for participating in this. Well, they did have a reason. The reason was they had a deal that they wanted to conclude, and so there wasn't a pleased person that they were concluding the deal with. Well, that's nothing more than an allegation that they engaged in an ordinary sales transaction, and in terms of an ordinary sales transaction that involved a knowing breach of fiduciary duty by somebody else. But in terms of your explanation, they certainly fit within the explanation, i.e., they had a motive for participating, so they weren't simply being good Samaritans in aiding and abetting a breach of fiduciary duty. I think the Court is moving on beyond the question of is there financial gain to whether financial gain is adequately stated in terms of just alleging that they were trying to obtain financial gain, whether or not they obtained it, and that was an issue that was not raised to the district court. It's just not clear to me in California whether financial gain is required or not. I mean, if it's not required, then it would seem to me that you would still be in the lawsuit. If it is required, that is what the district court said it was, correct? I agree. Well, tell me what, if financial gain isn't required, what's the parade of horribles that, I mean, can just anyone get sued? Well, aiding and abetting liability has developed on an ad hoc basis. A central bank case that the Supreme Court issued talks about many of the costs of aiding and abetting liability and ultimately rejected aiding and abetting liability entirely in the context of securities claims. Now, that case has not been briefed because this issue was never raised in the briefs originally until there was a motion for leave to file supplemental briefing. But the Supreme Court did recognize that there are substantial costs imposed on business transactions that may exceed the benefits of imposing liability. So reasonable minds could differ as to whether or not that's a good element to have as part of the test. However, what Nielsen did is it first said, we acknowledge that California law holds that aiding and abetting liability requires a showing of financial gain. Nielsen itself says that. And then it says, but we think that's a bad idea. And it cited a securities law review article saying that it's better incorporated as part of the evidence rather than as a separate element. And perhaps the Nielsen Court feels that it's a better test, but that's not the law as Nielsen itself stated in California. Well, it wasn't at that point, but now we have Casey. Casey makes no mention whatsoever of this issue. Doesn't the fact that it makes no mention have something to do with the problem? It states the elements of the tort and it doesn't make any mention of any financial advantage requirement. But there's no indication that it was raised by any of the parties or that it was focused on that issue in any way as opposed to the knowledge question that is the centerpiece of the Casey opinion. And I would point out that regarding their opportunity to plead financial gain, they took discovery and arbitration.  Then they filed their complaint and they said that in no way did this alleged misallocation affect what TD, excuse me, Toronto Dominion Bank paid. And so then the district court issued its first order dismissing it and said, this is what you have to plead. You have to plead under city of Atascadero that there is financial gain. So they were on notice of that and they came back. And a second time they pleaded that there was no financial gain to Toronto Dominion Bank. Is your understanding that that pleading negates the following? If JSS came to Toronto Bank and said, well, we'd love to engage in this deal, but the only way we're going to do it is if you help us breach our fiduciary duty to MJT by creating a new corporation and selling that one asset to that corporation for a lot lower than we really owe them, or otherwise we're going to walk away from the deal, would that, A, would that state a cause of action, and B, is that consistent with the pleadings? If they could affirmatively allege that TD would have paid millions. I'm not talking about paying now. As I just explained, I gave you a very specific hypothetical. It has nothing to do with, it's not a question of purchase price. We're just saying this is the only way we're doing the deal. Or we walk away from the deal. I would not see financial gain there. And the difference between having a deal and not having a deal is not financial gain? Well, there are numerous cases talking about, as Nielsen itself originally held, it said that the fact that there were ordinary banking fees obtained by the bank did not qualify as financial gain. That was the first holding of Nielsen before the Nielsen court changed its mind and decided that financial gain was not an element. So it itself acknowledged that ordinary business transactions do not qualify as financial gain. And in terms of there being a contradiction, Reddy shows that the court has discretion to decide whether there is a contradiction in the pleadings. And I think any reasonable reading of their pleadings, which were well-informed pleadings made repeatedly saying that there was no benefit in terms of price TD paid, was not some mere accident. And when they offered to amend to say that this likely would have increased the price by millions of dollars, it can't even say now that it affirmatively would have. They say likely, perhaps it would, perhaps it wouldn't have. And so I think the district court was well within its discretion to find that there was an amendment offered, which would contradict its pleadings. I think what your theory is here, and probably the district court's, was that if you look at the transaction between JSS and Toronto, the bank, when it's all over, JSS ends up with a bunch of stuff, and Toronto Bank ends up with a bunch of stuff, and it's a fair transaction, it's an even deal, and everybody's even at that point. And therefore, there's no gain simply by making the deal. That seems to be the theory, I think, of the district court. And if financial gain is needed, you'd have to say as a result of this, they gained something over and above just what would be a mutual exchange at the time of the transaction. But what if, and that's a good argument, and I understand that argument, and the district court set it out, but what if financial gain in that way is not required? What if it's more like Judge Berzon said, that the Toronto Bank folks got their deal, and what they wanted was the deal, and if they had to mark down the LMM, isn't it, from $1.2 million to $500,000 and just reallocate the assets, they didn't care, they were willing to do that to make their deal. That's an advantage, it seems to me, that they got their deal. But it may not be financial gain. Well, I understand Your Honor's point. But also, if you look at the cases, you could argue that when an attorney gets paid his fees or a bank receives its banking fees, that could be conceived as some sort of advantage, too. But that sort of ordinary business transaction has not been held by ---- This is what a tascadero actually says. It says as long as the ---- let's leave Casey aside for now. It says as long as the third parties were acting to further their own individual economic interests, they may be liable for actively participating in a fiduciary breach of his trust. And then it says the third party's participation was both active and for the purpose of advancing their own interests or financial advantage. So why doesn't this just come right squarely within that? They're advancing their own interests. Whether they're going to have a net financial gain doesn't seem to be the test. I appreciate Your Honor's point. But I would just point out that there is no case with similar facts. It's the main case you're relying on, a tascadero. Well, if you look at the facts of that case, the ultimate ruling is that there were excessive commissions based on Merrill Lynch's recommendation. The question is what rule of law did they state? Was that a necessary to the result that apparently it wasn't? I just read through the language. I believe when they say that in furtherance of economic advantage, they mean that to be functionally equivalent to financial gain. You can have about another minute if you need it or if not, you can. I'd just like to respond to one other point. The survival issue, this issue was not briefed to the district court and was also waived like many of the issues in this case. It's also incorrect to say that the joint venture continued. There was a contractual provision which allowed 45 days' notice to terminate under the terms of the contract. That's not the same as filing suit for breach of contract. And as Romano and Taylor in their own case, Monolith, all hold, when you file suit, the contract is over, the expectancy ends. And as Your Honor rightly pointed out, the breach of fiduciary duty actually ends with that as well, although I would agree that it's an issue that's not been briefed. Could you tell me what the relevance is? I don't remember the relevance of this issue, the survival issue. How is it pertinent to what we're doing now? Well, counsel mentioned that they believe the contract survived and therefore all the duties, whether fiduciary or in regard to the tortious interference claim. But is that pertinent to our current problem? It's not pertinent to what Your Honor was talking about with regard to financial gain. Well, is it pertinent to what we decide now as opposed to on remand if we were to conclude that the district court was wrong about the financial gain issue? It is pertinent to affirming the district court on the tortious interference issue. On the tortious interference issue, but not this one. Correct. Yes, Your Honor.  Thank you very much. Thank you. If I may, Your Honor, I just want to respond to a couple of things. First of all, even if we find that Casey did not eliminate the financial gain requirement, let's look at the facts of Casey. What was the financial gain? The financial gain there was ordinary banking fees, nothing special, nothing extraordinary, nothing unique, just the ordinary banking fees that the bank would have received doing a transaction for anyone else under any other circumstances. And any transaction the bank did would be subject to a lawsuit. No. It would meet that element of the lawsuit, but it would not be subject. You have other elements of the claim as well. You have to know of the fiduciary duty, and you have to substantially assist in its breach. In other words, if I go deposit money at a bank that I have stolen from a client, that bank is not aiding and abetting my breach of fiduciary duty unless the bank knows that they're facilitating a transaction and they're lending substantial assistance to it. They're not just accepting deposits. They're doing something else. Well, Apelli says that Nielsen says it's got to be more than that. And as Apelli has correctly pointed out earlier, Nielsen is a federal case, a district court case, and Nielsen initially said that but then found, no, the correct view of California law is that this element doesn't apply at all. And that's why I think that Casey said, yes, Nielsen's correct. If, as Apelli says, Casey does not remove this element, well, fine. What did Casey find adequate to meet the element? It found ordinary banking fees to be adequate. Similarly, in Bancroft-Whitney, what was the defendant doing in furtherance of its own gain? It was trying to hire people. That's all. They didn't need to plead that they were good employees that they got. They just needed to plead that they were trying to hire people, what people do every day, and yet you're not subject to a lawsuit for aiding and abetting a breach of fiduciary duty every time you hire someone in California. Well, I have one last question. Absolutely. If we agreed with you on the aiding and abetting issue, do we reach anything else? Well, do we reach the intentional interference, but would we reach the punitive damages issue or the attorneys' fees issue? Well, attorneys' fees, perhaps. You would not. Punitive damages, presumably not, because the premise of that was that there were no damages and there might be damages. The district court actually found that we were allowed to seek punitive damages. I understand. Even if there weren't damages, but that was on the premise that you didn't have any viable cause of action underlying it, but you might. But if you had one, then the question of whether you could get punitive damages without one is really not the point. The district court, I believe the district court found that if we had a cause of action, that even if there were a procedural bar to recovering damages, so long as we could prove that MJT suffered damages, we would be entitled to seek punitive damages. I see. Because you still might have a damages problem because of the arbitration. Correct. Okay. I would just like to address one other thing. This description of our complaint has come up several times, and it's not accurate. MJT did not allege that there was no benefit to TD. MJT alleged in paragraph 15 of our first amended complaint that once the sham structure was in place, that the amount taken from this box of what TD was getting paid and transferred over here to what would be part of the TD options deal was irrelevant to TD because they were paying the same total amount anyway. But that assumed that the sham transaction structure that constituted the breach was in place in the first instance. And to suggest that we could not allege or we didn't mean or we didn't believe or we weren't saying that TD got a benefit out of this by being able to close the deal, possibly at a cheaper price, is incorrect. Okay. Thank you very much. Thank you very much. Thank you, counsel. We appreciate the arguments. The case of MJT v. Toronto Bank is submitted. Sales v. Farwell is submitted under briefs. United States v. Lowry is submitted under briefs. And Fisher v. San Jose, I gather counsel are now here. Is that right?
judges: Thompson, Berzon, Callahan